## IN THE CIRCUIT COURT OF MARYLAND FOR CALVERT COUNTY

| | | |
|---|---|---|
| **RUTH R. GREEN**<br>P.O. Box 64<br>4061 Songbird Lane<br>Broomes Island, Maryland 20615<br>        Calvert County<br>                **Plaintiff,**<br><br>    v.<br><br>**POST NEWSWEEK MEDIA, INC.**<br>1200 Quince Orchard Boulevard.<br>Gaithersburg, Maryland 20878<br>        Montgomery County<br><br><br>    Serve: The Corporation Trust, Inc.<br>            300 East Lombard Street<br>            Baltimore, Maryland 21202<br><br>                **Defendant** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Case No.<br>04-C-09-001097<br>                OC<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Ruth R. Green ("Ruth 'Jeannie' Green" or "Plaintiff"), by her counsel, Thatcher

Law Firm, LLC brings this action against her former employer, Defendant Post NewsWeek

Media, Inc. (the "Post," the "Company" or "Defendant") under Article 49B of the Maryland

Annotated Code (to be re-codified, without relevant substantive changes, on October 1, 2009 as

State Government Article of the Annotated Code of Maryland, Title 20. Human

Relations) the Maryland Wage Payment and Collection Law, Md. Code Ann., Labor &

Employment §§3-501 – 3-509, and at common law for Intentional Misrepresentation,

Constructive Fraud, and Negligent Misrepresentation. Accordingly, Plaintiff seeks declaratory,

equitable, and monetary relief.

FILED

2009 AUG -3 PM 4: 10

CALVERT COUNTY CLERK
CIRCUIT COURT

## SUBJECT MATTER JURISDICTION

1.      This Court has jurisdiction over the subject matter of this case pursuant to

Maryland Code Ann., Art. 49B § 11B and *Cts. & Jud. Pro.* Art., § 1-501.

## VENUE

2.      Venue lies in this Court because Plaintiff's claim arose in Calvert County, the

discriminatory practices of which Plaintiff complains occurred in Calvert County and because

the Defendant regularly carries on business in Calvert County, Maryland.

## PARTIES

3.      Plaintiff is a 66 year old female who was over the age of forty (40) at the time of

the actions complained of herein.  She is a citizen and domiciliary of Maryland.  At the time of

her termination from the Company, she was a 64 year old employee of the Post within the

meaning of Maryland Code Ann., Art. 49B, § 15(e).

4.      Defendant, Post NewsWeek Media, Inc. is a Maryland corporation that, at all

times relevant to this Complaint, owned and operated the *Calvert Recorder Newspaper* (the

"*Calvert Recorder*") who was Plaintiff's employer.

5.      Defendant employed Ruth "Jeannie" Green for over 19 years.  At all relevant

times, Defendant employed more than fifteen (15) employees on a full-time basis for more than

twenty (20) weeks in each of the relevant calendar years within the meaning of Maryland Code

Ann., Art. 49B, § 15(b).

## FACTS

### Employment History

6.      In 1989, Ruth "Jeannie" Green began work as General Manager of the *Calvert*

*Recorder Newspaper*, which at all times relevant to this Complaint, was owned and operated by

the Defendant.

7.      Ruth "Jeannie" Green's primary responsibility as General Manager was to solicit

and obtain advertising for the *Calvert Recorder*. The advertising that Ruth "Jeannie" Green

oversaw constituted the largest revenue source for the newspaper. Ruth "Jeannie" Green had

invested years of her life in developing a network of advertiser contacts and long-standing

relationships for the *Calvert Recorder* that the newspaper could draw upon and continues to draw

upon to generate income, even after having terminated her.

8.      During her entire career at the *Calvert Recorder*, up to and including the date of

her termination on August 17, 2007, Ruth "Jeannie" Green met and/or exceeded the legitimate

expectations of her employer.  Ruth "Jeannie" Green did not receive any negative performance

evaluations.

9.      Ruth "Jeannie" Green was recognized for her excellence as a general manager on

various occasions in the two years immediately before her termination.  For example, from June

until November 2006, Ruth "Jeannie" Green sold approximately $100,000.00 in political

advertising.  In January 2007, Melissa Buck, a sales representative, whom Ruth "Jeannie" Green

had interviewed, hired, and trained, won a contest among all sales representatives from every

newspaper owned by the Defendant by bringing in the most sales contracts.  In March 2007,

Ruth "Jeannie" Green negotiated a thirteen week advertising contract with Maryland Pools with

an approximate value of $39,000.00.  In April, 2007, Ruth "Jeannie" Green convinced Anthony

and Sylvan, an existing advertiser, to broaden its advertising program to the Enterprise (another

of Defendant's newspapers); this resulted in additional income of approximately $7,000.00 for

Defendant.  In July, 2007, approximately one month before Ruth "Jeannie" Green's termination,

Ruth "Jeannie" Green published the Calvert County Map, selling approximately $19,805.00

worth of advertising.

Termination

10.     Beginning in 2006, Ruth "Jeannie" Green's Supervisor, Ms. Karen Acton ("Ms.

Acton"), approximately 47 years old at the time, began to persistently question Ruth "Jeannie"

Green about whether she was going to retire soon.  Ms. Acton questioned Ruth "Jeannie" Green

about her possible retirement again and again during the year and a half immediately prior to

termination.  Each time, Ruth "Jeannie" Green insisted that she was not planning on retiring.

11.     In late 2006, shortly after several prominent news anchors from NBC had been

terminated, Ruth "Jeannie" Green held a sales meeting which Ms. Acton attended, along with

sales representatives who reported to Ruth "Jeannie" Green.  At this meeting, in the presence of

the other individuals attending, Ms. Acton looked directly at Ruth "Jeannie" Green and stated:

*"Did you notice how they got rid of people who worked there for many years and replaced*

*them with younger people?"* After the meeting, Ruth "Jeannie" Green's fellow employees in

attendance at the meeting told her that Ms. Acton *"wants you out of here."*

12.     In or around mid-May 2007, Ms. Acton asked Plaintiff again whether she planned

to retire.  When Plaintiff replied that she did not want to retire and wanted to continue working

for the *Recorder*, Ms. Acton reminded Plaintiff of her belief that *"people should go out at the top of their game."*

13.     In December of 2006, Ruth "Jeannie" Green had eighty (80) hours of unused accrued vacation time. Ruth "Jeannie" Green told Ms. Acton that she would like to take one week off in December during the holidays and was initially granted this time off, but when she tried to use her vacation time, she was ordered into work.

14.     Ruth "Jeannie" Green was hospitalized with pneumonia on January 15, 2007. When Ruth "Jeannie" Green was hospitalized, Ms. Acton, contrary to her previous course of conduct, refused to allow Ruth "Jeannie" Green to use accrued vacation time from 2006 for that absence. This earned vacation time was the same time that Ruth "Jeannie" Green was forbidden to use in 2006 when she wanted time off during Christmastime.

15.     While in the past, when Ms. Acton had denied Plaintiff's requests for vacation time, she had then permitted Ruth "Jeannie" Green to use vacation time for sick time, Ms. Acton now refused to allow Ruth "Jeannie" Green to use vacation time for her hospital stay. Ms. Acton informed Ruth "Jeannie" Green of this through an angry and aggressive telephone call, which Ruth "Jeannie" Green took in her hospital bed. As a result of Ms. Acton's outrageous conduct towards Ruth "Jeannie" Green, while she was gravely ill, Ruth "Jeannie" Green was emotionally rattled and had to be immediately placed on oxygen.

16.     Upon Ruth "Jeannie" Green's return to work, Ruth "Jeannie" Green learned that Ms. Acton had sent Christy Bailey ("Bailey"), a younger employee who Ruth "Jeannie" Green had hired and mentored, to work in her place for two days. Ms. Bailey subsequently informed employees that Ms. Acton had offered her Ruth "Jeannie" Green's position. Ms. Bailey is at

least 20 years younger than Ruth "Jeannie" Green and substantially less experienced. At the time of Ruth "Jeannie" Green's termination, Ms. Bailey was a Corporate Accounts manager.

17. On or about August 17, 2007, Ruth "Jeannie" Green attended a management meeting in Waldorf, Maryland with Ms. Acton and others. Immediately after the August 17, 2007 meeting, Ruth "Jeannie" Green met with Ms. Acton and Donna Johnson, Defendant Post NewsWeek Media, Inc.'s Vice President of Human Relations. At this meeting, Defendant terminated Ruth "Jeannie" Green. Ms. Acton told the Plaintiff that she was consolidating Ruth "Jeannie" Green's position with Ms. Bailey's corporate accounts position.

### The Release

18. During the termination meeting on Friday, August 17, 2007, Plaintiff was presented with a written release by Ms. Acton and Ms. Johnson. Although they told her that she had 21 days to consider signing the release, they immediately rendered this consideration period meaningless by telling her that her next paycheck, representing wages already due, would be withheld if she did not sign the release.

19. The release falsely states that Ruth "Jeannie" Green "has had at least twenty-one (21) days to consider" the release, when in fact, she was coerced into signing it on the same day that she first saw it.

20. Ruth "Jeannie" Green, because she relied upon her salary to meet her regular and necessary living expenses, immediately became distraught upon learning that she was terminated and would not receive her final paycheck unless she signed the release.

21. Ms. Acton and Ms. Johnson, intentionally taking advantage of the distress Ruth "Jeannie" Green was suffering and her financial vulnerability, convinced Ruth "Jeannie" Green

that she had no choice other than to sign the release during the meeting in order to receive her final paycheck.

22.     Ms. Acton and Ms. Johnson intentionally failed to advise Ruth "Jeannie" Green that she should consult an attorney prior to executing the release.

23.     Because Ruth "Jeannie" Green was so emotionally distraught, she signed the release without reading it in the presence of Ms. Acton and Ms. Johnson, who intentionally failed to advise her to read the release before signing it.

24.     Ms. Acton and Ms. Johnson knew that they misrepresented Ruth "Jeannie" Green's obligation to sign the release in order to receive her final pay.

25.     Ms. Acton and Ms. Johnson desired to induce Ruth "Jeannie" Green to sign the release without consulting with an attorney because they knew that their decision to terminate Ruth "Jeannie" Green was based upon her age and that if she consulted with counsel, she would be advised that she may have a claim against Defendant for wrongful termination. They intended for Ruth "Jeannie" Green to rely upon their representations.

26.     Ruth "Jeannie" Green signed the release during the meeting solely because Ms. Acton and Ms. Johnson represented that Plaintiff had to sign the release as a condition precedent to receiving her final pay. Plaintiff's reliance upon their representations was justified because of the positions they held with Defendant and their apparent authority to make such representations.

The Revocation

27.     After leaving the workplace and considering what had happened during the meeting with Ms. Acton and Ms. Johnson, Ruth "Jeannie" Green realized that executing the release was not in her best interest. Accordingly, on August 19, 2007, Ruth "Jeannie" Green

contacted Chuck Lyon, CEO of Defendant Post NewsWeek Media, Inc. and Donna Johnson by email (the "Revocation Email") and demanded that changes be made to the agreement.

28.     On Monday, August 20, 2007 Ruth "Jeannie" Green followed up on her demand for changes with a phone call to Donna Johnson. During this phone conversation, Plaintiff again demanded that changes be made to the agreement.

29.     Because Ruth "Jeannie" Green received no acceptable response from the Defendant to the Revocation Email or her phone call, Ruth "Jeannie" Green, within the twenty-one (21) day period during which she was entitled to consider the agreement free from coercion, consulted with and retained undersigned counsel on August 27, 2007 to determine what rights she had to contest the release. On that same day, Ruth "Jeannie" Green sent a formal letter to Chuck Lyon (by hand delivery and facsimile), again providing notice of revocation of the release.

30.     The release is of no force and effect because it was signed by Plaintiff under duress and because of her justified reliance upon intentional misrepresentations made by Defendant's agents.

31.     The release is invalid because Plaintiff did not execute the release voluntarily or knowingly.

32.     The release is invalid because it did not properly advise Ruth "Jeannie" Green to consult with an attorney.

33.     The release is invalid because Ruth "Jeannie" Green received no compensation, above and beyond what she otherwise would have received specifically for the release of her age discrimination claims.

34.     Even if the release is valid, the Revocation Email, follow-up phone call and August 27, 2007 letter validly revoked the release.

### ADMINISTRATIVE PROCEEDINGS

35.     On October 18, 2007 Plaintiff timely dual filed an administrative charge with the Equal Employment Opportunity Commission and the Montgomery County Office of Human Rights alleging unlawful discrimination on the basis of age.  More than 180 days have elapsed since Plaintiff filed her administrative charge.

36.     On March 24, 2009 Plaintiff received a Determination from the Equal Employment Opportunity Commission stating that there is "reasonable cause" to believe that Ruth "Jeannie" Green was "discharged because of her age."

37.     On May 6, 2009 Plaintiff received a right to sue letter.  Plaintiff filed the instant complaint within 90 days of her receipt of the right to sue letter.

38.     There are no other administrative remedies or procedures Plaintiff is pursuing or is required to pursue before seeking relief in this Court.

### Count I

### Violation of Article 49B, § 16(a)

39.     Plaintiff re-alleges and incorporates by reference the averments of all preceding paragraphs as if they were set forth fully herein.

40.     .Defendant's conduct in suggesting to Ruth "Jeannie" Green on numerous occasions that she consider retiring evinces a discriminatory state of mind.

41.     Defendant's comments made to Ruth "Jeannie" Green within a period of approximately 18 months regarding her need to consider retirement and the threat to refuse to

provide her with her final pay unless she signed a release created an age-based hostile work environment.

42.     Defendant terminated Ruth "Jeannie" Green based upon her age and replaced her with Ms. Bailey, a less qualified, substantially younger individual in violation of Maryland Code Ann., Art. 49B, § 16(a).

43.     Defendant's actions created a hostile work environment and constitute disparate treatment based upon age in violation of Maryland Code Ann., Art. 49B, § 16(a).

44.     Defendant's conduct was motivated by actual malice or, at the very least, reckless disregard for Plaintiff's rights under Maryland Code Ann. Art. 49B, § 16(a). But for her age, Plaintiff would not have been terminated.

45.     As a direct and proximate result of Defendant's unlawful conduct, Ruth "Jeannie" Green has suffered, is suffering and forever will continue to suffer lost earnings and benefits, emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life and inconvenience.

WHEREFORE Plaintiff prays that this Court enter judgment against Defendant:

A.     declaring that the acts of the Defendant violate Maryland Code Ann., Art. 49B, § 16;

B.     enjoining and permanently restraining Defendant and its agents, servants and employees from violating Maryland Code Ann., Art. 49B, § 16;

C.     directing Defendant to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue;

D.      directing Defendant to reinstate Plaintiff to a position such as she would have

attained but for the Defendant's discriminatory practices, or in the alternative to provide her with

appropriate front pay, in an amount to be determined at trial;

E.      directing Defendant to pay Plaintiff full back pay for the amount of wages,

earnings, and other employee benefits she would have received but for Defendant's

discriminatory treatment;

F.      awarding Plaintiff damages, including damages for diminished earning capacity,

emotional pain, suffering, professional and personal embarrassment, humiliation, loss of

enjoyment of life and inconvenience in the amount of Three Hundred Thousand Dollars

($300,000.00);

G.      awarding Plaintiff punitive damages in the amount of Three Hundred Thousand

Dollars ($300,000.00);

H.      awarding Plaintiff pre-judgment and post-judgment interest and the costs of this

action, including reasonable attorneys' fees; and

I.      granting such other or further relief as this Court deems necessary and proper.

## Count II

### Intentional Misrepresentation

46.     Plaintiff re-alleges and incorporates by reference the averments of all preceding

paragraphs as if they were set forth fully herein.

47.     The misleading statements by Defendant that Ruth "Jeannie" Green would not

receive her final pay unless she signed the release constituted false representations of material

fact to Plaintiff.

48.     Defendant knew that its representations were false when it made them and the representations were made with the intention of having Plaintiff act and rely upon them. Defendant was motivated by actual malice when it made the misrepresentations.

49.     Defendant knew that the Maryland Wage Payment and Collection Law, Md. Code Ann., Labor & Employment §§3-501 – 3-509, requires employers, such as Defendant, to provide its employees with payment of wages within the regular pay period if the employee has performed services; accordingly, Plaintiff was entitled to receive her final pay regardless of whether she executed a release.

50.     Defendant's failure to advise and inform Plaintiff that she would be entitled to receive her pay even if she did not sign the release constituted a failure to disclose a material fact, which it had a duty to disclose.

51.     Defendant, with the intent to deceive Plaintiff, failed to disclose to Plaintiff the consequences of her signing the release.  Defendant knew that Plaintiff would not have signed the release if she was aware that she had the right to seek counsel and take 21 days to consider the release. Further, Defendant knew that Plaintiff would not have signed the release if she was cognizant of the fact that she would receive her final pay even if she did not sign the release.

52.     Plaintiff signed the release during her termination in reliance upon Defendant's statements and she was justified in her reliance.

53.     As a direct and proximate result of her justifiable reliance on Defendant's statements, Plaintiff has suffered, is suffering and forever will continue to suffer lost earnings and benefits, emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life and inconvenience.

WHEREFORE Plaintiff prays that this Court enter a judgment against Defendant:

A. awarding her actual compensatory damages for lost earnings and benefits, diminished earning capacity, emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life and inconvenience in the amount of Five Hundred Thousand Dollars ($500,000.00);

B. awarding her punitive damages in the amount of Five Hundred Thousand Dollars ($500,000.00);

C. awarding her post judgment interest and costs; and

D. granting such other or further relief as this Court deems necessary and proper.

## COUNT III

### Constructive Fraud

54.     Plaintiff re-alleges and incorporates by reference the averments of all preceding paragraphs as if they were set forth fully herein.

55.     Defendant defrauded Ruth "Jeannie" Green by presenting her with a defective release of her claims, which it led her to believe was valid.

56.     Defendant failed to fulfill its legal and equitable duty to provide Ruth "Jeannie" Green with a release that advised her to seek the counsel of an attorney. Defendant's failure to do so violated important tenets of public policy regarding prohibiting age-based discrimination in employment.

57.     As a direct and proximate result of Defendant's constructive fraud, Ruth "Jeannie" Green has suffered, is suffering and forever will continue to suffer lost earnings and benefits, emotional

pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life and inconvenience.

WHEREFORE Plaintiff prays that this Court enter a judgment against Defendant:

A. awarding her actual compensatory damages for lost earnings and benefits, diminished earning capacity, emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life and inconvenience in the amount of Five Hundred Thousand Dollars ($500,000.00);

B. awarding her punitive damages in the amount of Five Hundred Thousand Dollars ($500,000.00);

C. awarding her post judgment interest and costs; and

D. granting such other or further relief as this Court deems necessary and proper.

## COUNT IV

### Negligent Misrepresentation

58.     Plaintiff re-alleges and incorporates by reference the averments of all preceding paragraphs as if they were set forth fully herein.

59.     Defendant, as Ruth "Jeannie" Green's employer, and as a result of inducing her to sign the release, was in contractual privity with Ruth "Jeannie" Green.

60.     Defendant, as a result of contractual privity, owed Ruth "Jeannie" Green a duty of reasonable care.

61.     Defendant breached that duty when it incorrectly informed Ruth "Jeannie" Green that she would not receive her last paycheck if she did not sign the release.

62.     Defendant knew or should have known that Ruth "Jeannie" Green would, pursuant to the Maryland Wage Payment and Collection Law, Md. Code Ann., Labor & Employment §§3-501 – 3-509, have received all monies she had earned prior to the date of her termination regardless of whether or not she signed the release.

63.     As a direct and proximate result of Defendant's negligent misrepresentations and its breach of the duty of reasonable care that it owed to Ruth "Jeannie" Green, Ruth "Jeannie" Green has suffered, is suffering and forever will continue to suffer lost earnings and benefits, emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life and inconvenience.

WHEREFORE Plaintiff prays that this Court enter a judgment against Defendant:

A. awarding her actual compensatory damages for lost earnings and benefits, diminished earning capacity, emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life and inconvenience in the amount of Five Hundred Thousand Dollars ($500,000.00);

B. awarding her punitive damages in the amount of Five Hundred Thousand Dollars ($500,000.00);

C. awarding her post judgment interest and costs; and

D. granting such other or further relief as this Court deems necessary and proper.

## COUNT V

### Violation of the Maryland Wage Payment and Collection Law

64.     Plaintiff re-alleges and incorporates by reference the averments of all preceding paragraphs as if they were set forth fully herein.

65.     Defendant intentionally deprived Ruth "Jeannie" Green of the use of over eighty (80) hours of accrued vacation time.

66.     Defendant, knowing that Ruth "Jeannie" Green was entitled to the use of this vacation time, intentionally and unlawfully refused to allow her to use this time during the Christmas season and while she was hospitalized.

67.     Defendant's actions were in violation of the Maryland Wage Payment and Collection Law, Md. Code Ann., Labor & Employment §§3-501 – 3-509.

WHEREFORE Plaintiff prays that this Court enter a judgment against Defendant:

A.  declaring that the acts of the Defendant violate the Maryland Wage Payment and Collection Law, Md. Code Ann., Labor & Employment §§3-501 – 3-509.

B.  awarding Plaintiff treble damages for her foregone vacation time in the approximate amount of $4,000 representing the value of the vacation time she was denied.

C.  awarding Plaintiff pre-judgment and post-judgment interest and the costs of this action, including reasonable attorneys' fees; and

D.  granting such other or further relief as this Court deems necessary and proper.

## PRAYER FOR JURY TRIAL

Plaintiff hereby elects to have her case tried before a jury on all issues so triable.

Respectfully submitted,

Linda Hitt Thatcher
Abbey G. Hairston

THATCHER LAW FIRM, LLC
Belle Point Office Park
7849 Belle Point Drive
Greenbelt, MD 20770

Telephone: (301) 441-1400
Facsimile: (301) 441-9602

www.thatcherlaw.com